301 So.2d 55

**Lawrence E. BOWLING**

v.

**Alex S. POW.**

**SC 679.**

Supreme Court of Alabama.

Sept. 19, 1974.

Lawrence E. Bowling, pro se.

Robert B. Harwood, Jr., Tuscaloosa, for appellee.

LEIGH CLARK, Supernumerary Circuit Judge.

This litigation is between two eminent former professors of English at the University of Alabama. This is an appeal by plaintiff from a judgment of the trial court dismissing the action.

The crucial issue is whether the trial court was in error in dismissing the action on the ground that the complaint does not state a claim upon which relief can be granted, the only ground asserted in the motion to dismiss.

The original complaint and the amended complaint are unnecessarily lengthy and contain many averments that do not constitute appropriate pleading, much of which is in the nature of an effort to plead the evidence. We summarize the gravamen by stating that it is alleged that defendant "falsely and maliciously and in bad faith" published of and concerning the plaintiff a letter dated June 20, 1972, containing defamatory statements intended to defame and injure plaintiff. The letter is set out in the complaint and is shown by the complaint to have been an answer to a letter from plaintiff to defendant of June 5, 1972, which is also quoted in full in the complaint. We set forth first the letter of June 5 as follows:

"P. O. Box 3001

UNIVERSITY OF ALABAMA

UNIVERSITY, ALABAMA 35486
"COLLEGE OF ARTS AND SCIENCES                          June 5, 1972

DEPARTMENT OF ENGLISH

CERTIFIED AIR MAIL

Dr. Alex S. Pow, President
Western Carolina University
Cullowhee, North Carolina 28723

Dear Dr. Pow:

It was good to talk with you during my recent visit to your home, even though the conditions were adverse for each of us. I hope and pray that your condition has improved. Mine has become worse. Dean Jones and President Mathews are pushing ahead with the hearing, which is scheduled to resume on June 12.

If your health will permit, I should like you to write me a letter stating the basic points of your remarks during our conversation. These included the following:

1. The 'departmental diary' filed against me by Dr. McMillan was originally submitted to you and President Rose and Vice President Bennett in 1967.

2. It was given full consideration by you and other University administrative officials at that time.

3. It was dismissed as being insufficient ground for filing of termination charges against me. You felt that the charges made against me by Dr. McMillan were irrelevant and immaterial to my competence and performance as a teacher and scholar.

4. Instead of trying to dismiss me on these charges by Dr. McMillan, the Uni-

versity administration began considering the recruitment of a replacement for Dr. McMillan as chairman of the Department of English. But you and President Rose and Dr. Bennett left the University before a replacement was found.

If you think of other points which may be of help to me in this matter, I shall be grateful for them also.

If you can write such a letter and, if convenient, have it notarized, it may suffice, without your having to make a trip to Tuscaloosa to testify. Address it to Mrs. Annabel D. Hagood, Chairman, Faculty Hearing Committee. I should like to have a copy.

Very sincerely yours,

Lawrence E. Bowling
Professor of English"

The letter of June 20, which contains the alleged defamatory matter, is as follows:

"90 Brookhaven
Tuscaloosa, Alabama     35401
June 20, 1972

"Dr. Lawrence E. Bowling
P. O. Box 3001
University, Alabama 35486

Dear Dr. Bowling:

I have recently received your letter of June 5, forwarded to me from Cullowhee, North Carolina; and I have studied this letter, as well as your similar request made to me personally at the above address and your telephone message directed to me through Mrs. Pow. I have important misgivings about doing what you have asked. First, I believe what you set out in your outline of a letter from me to the committee of inquiry does not parallel my remarks to you in Cullowhee, and, also, would not be accurate. Second, I am by no means sure that my following your request would be helpful to you before the committee.

I have told both you and President David Mathews that I should be pleased either to appear before the committee or to respond in writing to specific commit-

tee questions. Such procedure, it seems to me, would be infinitely more helpful to all parties than my merely signing, in effect, a communication which you have dictated for me. As yet, I have received no such request from the committee; but, you will notice, along the lines of your suggestion, I am sending a copy of this communication and your letter of June 5 to Professor Annabel Hagood (also copies to Professor Willard Gray, for I shall refer to him below). Mrs. Hagood may do with them what she wishes.

Because I have not seen the particular diary of which you speak in your letter, I am unable to determine whether it is the same Department of English record which I examined in 1967–68. I could determine this easily if the committee were to furnish me a copy of the record before it and if I could discuss this record with Professor Willard Gray. Even if the record is only one, and the one which I have read, I am not sufficiently versed in law to determine whether or not my past consideration of it and the present committee inquiry would have the effect of placing you 'twice in jeopardy.' Indeed, it seems to me that a case could be made that the decision of the University administration before not to file charges based on the departmental record constitutes the present inquiry as placing you in 'jeopardy' for the first time.

As I stated to you during your recent visit to this address, I believe I have never said to you, before Professor Gray or otherwise, that the University administration was considering the replacement of Professor McMillan at the time it was considering the departmental record referenced above. In any event, it seems to me that the plans and activities of the College of Arts and Sciences in this regard could be determined better through inquiry to either Dr. Frederick W. Conner and Dr. Raymond F. McLain, who, then, I believe held the position of Dean, College of Arts and Sciences.

I do not know whether the Department of English diary was 'insufficient grounds for filing termination charges,' 'irrelevant and immaterial to your performance and competence.' I can make only the simple statement that the University administration elected *not* to file charges on the basis of whatever record was before it. On the other hand, the University administration did recommend to you concerning what it considered best for you and the University. You decided not to follow this advice. I shall be pleased to elaborate before the committee if that is the committee's wish. With the hope that your health continues to improve and the *thope* [sic] that you and the University are able equitably to resolve the conflict between you, I am

Sincerely yours,

Alex S. Pow

Alex S. Pow

cc: Professor Annabel Hagood
Professor Willard Gray";

of which letter, as shown by the original, defendant sent a copy to Professor Annabel Hagood and a copy to Professor Willard Gray. The complaint alleges that Mrs. Hagood was chairman of the Faculty Hearing Committee, before which plaintiff at the time was to stand trial on charges demanding his dismissal from his position as professor of English at the University of Alabama, and that Professor Willard Gray was associate academic vice president. As shown above, both of them are mentioned in defendant's letter to plaintiff, along with other prominent officials or members of the faculty of the University of Alabama. Plaintiff-appellant, appearing pro se in the trial court and on appeal, urges that the complaint is sufficient as a claim for damages for libel.

It is strongly insisted by able counsel for defendant-appellee that Dr. Pow's letter of June 20, 1972, is not libelous and that it cannot constitute a basis for plaintiff's claim for damages.

■ Literal uniformity is not to be found in countless definitions of libel. It is essentially an injury to reputation. As stated by Justice Merrill in McGraw v. Thomason, 265 Ala. 635, 93 So.2d 741:

"The definitions of libel, as found in the cases, vary somewhat in phraseology, and are more or less comprehensive, as may be called for by the particular charge involved in the case. Generally, any false and malicious publication, when expressed in printing or writing, or by signs or pictures, is a libel, which charges an offense punishable by indictment, or which tends to bring an individual into public hatred, contempt, or ridicule, or charges an act odious and disgraceful in society. This general definition may be said to include whatever tends to injure the character of an individual, blacken his reputation, or imputes fraud, dishonesty, or other moral turpitude, or reflects shame, or tends to put him without the pale of social intercourse. White v. Birmingham Post Co., 233 Ala. 547, 172 So. 649; Marion v. Davis, 217 Ala. 16, 114 So. 357, 55 A.L.R. 171, and Iron Age Publishing Co. v. Crudup, 85 Ala. 519, 5 So. 332."

■ Words usually, though not always, form the basis of actions of defamation. Known better by the parties, men of letters, than by men of law in general, " . . . Words, words, words . . . ",[1] sometimes apparently meaningless, even occasionally indicating "madness" with a "method in't",[2] often have such a variety of meanings that the context of particular words must be examined at times in order to determine their meaning on the occasion of their use. As to speakers or writers in general, the context usually consists of the language that precedes or follows, or both, the words in question. In the law of defamation, how-

---

1. *Hamlet* II. ii. 195.

2. *Id.* at 211.

ever, the field of examination is much broader and includes extrinsic circumstances not found within the contexture of a particular discourse. This to a great extent accounts for the development in common law pleading of subjects referred to as inducement, innuendo and colloquium. We are not here directly concerned with the intricacies of common law pleading, as the action is governed by the Alabama Rules of Civil Procedure, but a consideration of the mentioned terms, applicable as strictly legal expressions to actions of defamation only, seems to shed some light upon the question before us. Although variously stated, the inducement is that part of the complaint in an action of defamation that sets forth extrinsic facts which the plaintiff deems advisable or appropriate to allege in his effort to show in the complaint that the matter published is defamatory. The innuendo is that part of the complaint wherein the plaintiff seeks to explain the meaning of language as defamatory, which could or would otherwise be considered as innocuous or so ambiguous or uncertain in meaning that a defamatory sense is not clearly revealed. The colloquium is that part of the complaint that in effect charges that the defamatory matter was published of and concerning the plaintiff. 50 Am.Jur.2d Libel and Slander, §§ 412–414. Evidently perceiving that the alleged libelous letter did not in and of itself, that is, on its face, without consideration of extrinsic circumstances, defame plaintiff, or in order to bolster the claim that it was defamatory, plaintiff alleged many extrinsic circumstances, including several that are not appropriately a part of pleading, whether at common law or under the Alabama Rules of Civil Procedure; but no question is here presented as to the inappropriateness thereof, and we take no action with reference to it.

It is to be readily seen that there can be matter that is so clearly and certainly defamatory and applicable to plaintiff on its face that there was no necessity, even at common law, to set forth in such cases, an inducement, an innuendo, or a colloquium. On the other hand, it is equally observable that at times the contents of an alleged publication are not sufficient in and of themselves to show a defamatory imputation directed at plaintiff and that a showing of extrinsic circumstances, a defamatory meaning or an application to plaintiff —one, two or all—is necessary to show that plaintiff was defamed.

Defamation does not necessarily involve opprobrious or scurrilous language. It is often elegant, refined and scholarly in essence and environment, and some of the best linguists have engaged in and been victims of it. The parties hereto can find distinguished company, as evidenced by Cooper v. Greeley, 1 Denio 347 (N.Y. 1845), in which the words of Horace Greeley concerning James Fenimore Cooper, "He will not bring the action in New York, for we are known here, nor in Otsego, for he is known there" were held defamatory as imputing a bad reputation to Cooper in Otsego, an example of defamation by indirection by suave implication.

The resolution of any contention that the language involved here is not defamatory per se, even though it may be defamatory per quod, is not necessary, as the complaint claims special damage in at least one respect, in that it alleges that as a consequence of the alleged publication plaintiff was discharged from his tenured position as professor of English at the University of Alabama, at the height of his professional career and with an expectancy of fourteen years of future and fruitful employment, that plaintiff was cut off from many fringe benefits, including the opportunity to vest his teacher retirement benefits in the Alabama Tenure Retirement system and the benefit of a life insurance policy. Speaking to the point through Justice, later Chief Justice, Gardner, in Harrison v. Burger, 212 Ala. 670, 103 So. 842, the court held:

"We are of the opinion the foregoing authorities support the view that counts

4 and 5 are defective in failing to sufficiently allege special damages suffered by the plaintiff. We think, however, that count C suffices in that respect as showing that as a consequence of the false publication plaintiff's credit was impaired, and that she was in fact unable to get credit at other stores in Birmingham. This, in our opinion, meets the requirements as to special damages. This count alleges that the language used was falsely and maliciously published in writing, and, followed by averments of special damages suffered, is sufficient as stating a cause of action as disclosed by the authorities herein previously cited.

.    .    .    .    .    .

"It results that the court erred in sustaining the demurrer to count C. Let the judgment be reversed, and the cause remanded."

In this connection, however, it is to be noted that two dichotomies can be involved and are often confused by use of either of the mentioned terms in contradistinction to the other, as the term "defamation per se" is capable of signifying both that which is defamatory on its face and that which is actionable without the proof of special damage, and "defamation per quod" is capable of denoting the necessity of extrinsic facts to establish a defamatory meaning and that of proof of special damage. See Prosser, Torts, p. 763 (4th Ed.).

Our task here is to determine whether any part of the letter of defendant of June 20, 1972, can be reasonably construed as defamatory of plaintiff. It is not for us to say whether it should be so construed, but only whether it is reasonably susceptible of such a construction.

As to this, appellant emphasizes in his brief some particular parts of the letter.

In the letter defendant stated, "I believe what you set out in your outline of letter from me to the Committee of Inquiry does not parallel my remarks to you in Cullowhee, and, also, would not be accurate." There is little, if anything, apparently derogatory about the statement. Standing alone, it is as innocuous as the usual, and generally accepted as appropriate, statement of disagreement by one person with what another has said or written. But the statement is not to be judged standing alone. It is to be weighed in the light of the letter in its entirety, a requirement set forth in Berry v. City of New York Insurance Company, 210 Ala. 369, 98 So. 290, and viewed against the background of the letter to which it was a reply, a copy of which was transmitted by defendant with the copy he sent Professor Gray. The statement, as well as other statements in defendant's letter, is to be considered in connection with the entire picture, including particularly circumstances of an imminent hearing of charges against plaintiff of conduct that could and did result in his dismissal. The statement is polite and temperate, as is the letter as a whole, but this does not prevent it from being defamatory. Whether in this particular it is defamatory or not depends largely upon whether it can be reasonably construed as the imputation of an effort upon the part of plaintiff to present before the hearing committee inaccurate or false statements or testimony.

The parties in their briefs give special consideration to the sentence, "Such procedure, it seems to me, would be infinitely more helpful to all parties than by merely signing, in effect, a communication which you had dictated for me." Appellee insists that the particular language "in no way impugned Dr. Bowling." There is some difficulty in arriving at any conclusion that it did. Here again, both letters and all the circumstances must be taken into consideration. Although it is not necessary to invite the attention of the parties, themselves lexicologists, to any dictionary on the point, we note that the transitive of the verb "dictate" is defined in Merriam-

Webster, Third International Dictionary as follows:

"—vt 1: to speak, recite, or read off (something) for a person to write down or transcribe or for a machine to record [*dictating* a letter to the secretary] [*dictating* test questions to a class] [*dictating* a statement to the reporters]; *sometimes:* to compose while speaking 2 a: to issue as an order usu. peremptorily [the duke *dictating* what part each should take] b: to command or impose authoritatively: PRESCRIBE, ENJOIN: direct forcefully or irresistibly [*dictating* peace terms to the vanquished] c: to require or determine necessarily [the weight of the floor—s use of heavy supports] [an arrangement *dictated* by the situation] d: to bring into being, form, determine, or influence commandingly . . . [*dictating* public taste] e: to designate authoritatively, overriding possible opposition [a president strong enough to—his successor]"

With this comprehensive definition in mind, it is to be observed that it can be well argued that under all the circumstances an imputation of a strong-willed determination on the part of the plaintiff that defendant should write as plaintiff had written, for presentation to the Hearing Committee, is to be found in the language used, even though strong argument can be made to the contrary.

Other particulars of defendant's letter wherein he takes issue with plaintiff as to the correctness of what plaintiff stated in his letter had been said by defendant are considered in the briefs of parties with definite disagreement between them as to the question of a defamatory meaning.

In support of plaintiff's contention that the letter of defendant in effect charged plaintiff with an effort to obstruct the justice that should obtain in a hearing before the Faculty Hearing Committee, he relies heavily upon statements made by counsel for the University in his argument before the Committee. The alleged statements of the attorney are contained in the following excerpts from the complaint:

"17. Early in his closing argument, University Counsel . . . [not of counsel in this case] cited defendant's derogatory letter as 'one of the probative items of evidence' and as 'a documented effort to pervert facts':

In this search for truth where there is controversy, we submit that one of the probative items of evidence is the Committee's Exhibit 1 where we have a documented effort to pervert facts. This is from one person who is completely disinterested in these proceedings and should be probably the most objective witness that either party could bring. The question was, 'Please write this answer.' The answer is, 'I can't because it's not true. It's not what I said.'—the fabrication. That's not what I meant to say. [H. T., pp. 1025–6]

. . . . . .

"19. University Counsel . . . . cited defendant's letter again, as the final and climatic point of his argument:

We have heard a great deal concerning the truth contained in Dr. Bowling's testimony and that everything he has told us has been, in . . . [plaintiff's attorney's] words, truth, truth, truth. I again respectfully invite the Committee's attention to the Committee Exhibit 1. It points to several untruths. Number one, the untruth which is attempted to be obtained from Dr. Pow. . . . Even more importantly is the untruth proven by this, that witnesses were unable or unwilling to testify for Professor Bowling, because, in this letter is an expressed willingness, 'I don't think you will like what you will hear when I get there, but all you have to do is call me.' [Hearing Transcript, pp. 1066–1067]

With this allegation that Dr. Pow's letter was undeniable and irrefutable evidence of the falsity of the testimony and the lack of personal and professional integrity of plaintiff, Counsel . . . concluded: 'We again respectfully submit that we have proven our case, and we ask that the charges be upheld' to dismiss plaintiff as being 'unfit to perform teaching duties adequately in the Department of English' ['Statement of Charges,' page 2]."

■ The complaint clearly contravenes the Alabama Rules of Civil Procedure requirement of a short and plain statement of the claim showing that the pleader is entitled to relief and that each averment of a pleading shall be simple, concise, and direct, as set forth in Rule 8(a) and 8(e)(1), but the action was not dismissed for that reason, and no contention is made that such violation of the rules of pleadings is a valid ground for a dismissal of the action. That it is not a valid ground is well settled in the cases that have passed upon the point where governed by Federal Rules of Civil Procedure, the same in all material respects as to the mentioned requirement as the Alabama Rules. In DeWitt v. Pail, 366 F.2d 682 (9th Cir. 1966) the court stated:

"Failure, in an initial complaint, to set forth the claim by means of a short and plain statement, as required by Rule 8(a)(2), is not a ground for dismissal of an action with prejudice, since there are procedures available for correcting a vague or prolix complaint. See Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 235, 79 S.Ct. 760, 3 L.Ed.2d 770. Among such available procedures are those provided for in Rule 12(e), Federal Rules of Civil Procedure (motion for a more definite statement); Rule 12(f) (motion to strike portions of the pleading); Rule 15 (right to amend); Rule 16 (pre-trial procedure and formulation of issues); Rules 26–37 (depositions and discovery).[1]

"[1]. Where a plaintiff persists in violating Rule 8(a)(2), after being given an opportunity to replead, dismissal may be proper. See Corcoran v. Yorty, 9 Cir., 347 F.2d 222, 223; Agnew v. Moody, 9 Cir., 330 F. 2d 868, 870–871.

"This leaves for consideration the question of whether the complaint in its present form fails to state a claim upon which relief can be granted and, if so, whether the district court correctly determined that the action could not be saved by any amendment of the complaint which the plaintiff could reasonably be expected to make."

■ The adoption of the Alabama Rules of Civil Procedure precludes us from testing the sufficiency of the complaint by a rule that formerly governed, that a complaint challenged by demurrer should be construed against the plaintiff, if the complaint is reasonably subject to such a construction. By adoption of the Alabama Rules of Civil Procedure, the opposite principle of construction obtains, following the established principle set forth in *DeWitt,* supra, as follows:

"A complaint is not subject to dismissal upon the ground that it fails to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed. 2d 80; Marshall v. Sawyer, 9 Cir., 301 F.2d 639, 647. In applying this test it is to be borne in mind that the spirit of the Federal Rules of Civil Procedure requires us to construe the pleadings most strongly in favor of the pleader. Metropolitan Life Ins. Co. v. Fugate, 5 Cir., 313 F.2d 788, 795. A liberal construction of the pleadings is especially called for where they were prepared by a layman, Downing v. New Mexico State Supreme Court, 10 Cir., 339 F.2d 435, 436."

In 1 Lyons, Alabama Practice, Rules of Civil Procedure Annotated 96–97, is the

following succinct statement of the controlling principle of construction of pleadings:

"Rule 8 is expressly intended to repudiate the long standing doctrine in Alabama of construing the pleadings strictly against the pleader, when ruling on demurrer. See Alabama Baptist Hospital Board v. Carter, 226 Ala. 109, 145 So. 443 (1933); Richards v. Richards, 98 Ala. 599, 12 So. 817 (1892); Childress v. Miller, 4 Ala. 447 (1842). According to Rule 8(f), the goal of the proposed rule is to construe the pleadings so as to do substantial justice. 'In appraising the sufficiency of the complaint we follow . . . the accepted rule that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Dennis v. Village of Tonka Bay, 151 F.2d 411 (2d Cir. 1944); 5 Wright and Miller, Federal Practice and Procedure, §§ 1220, 1286 (1969)."

■ There seems to be no contention that the requisite tripartite situation did not exist, that there was no publication, that is, no communication by one person to another person about a third person, in the transmission of copies of the letter to Professors Annabel Hagood and Willard Gray. We do not ignore the possibility of such contention on the theory that perhaps plaintiff constituted them his agents for receipt of the communication, as held in Mims v. Metropolitan Life Ins. Co., 200 F.2d 800 (5th Cir.) cert. denied, 345 U.S. 940, 73 S.Ct. 831, 97 L.Ed. 1366, but the circumstances shown by the record do not now warrant that conclusion, and any evidence to that effect cannot be envisioned as conclusively in favor of defendant on the point, so as to prevent a jury question as to it. The reference to them, in plaintiff's letter to defendant, is not sufficient

for that purpose, although it may betoken a serious contention to that effect and that plaintiff consented to the publication, that is, the transmission of the copies to Professors Hagood and Gray. We need not now determine the efficacy of any special or affirmative defense, which may or may not be interposed. Such defenses would include any prospective defense of privilege [3] or truth, [4] the strength of which, though possibly great, cannot be definitely assayed now. In its present posture, the case can be looked upon, for the purpose at hand, which requires an assumption of the truth of the factual averments (whether true or not), as one in which defendant communicated to others the contents of his letter, without any legal, moral or social obligation to do so, without justification and in breach of confidence reposed in him by plaintiff.

We would have serious misgiving as to any decision at this time whether any of the contents of the letter complained of are susceptible of a reasonable construction that they are actually defamatory, but such a decision at present is neither required nor in the best interest of correctness. It can be readily seen that there can be times when such a determination can and should be made at the threshold, but we are persuaded that the circumstances involved here do not present such a case. We realize that at the conclusion of any trial of the case the trial court may be able to say as a matter of law that the publication was not defamatory of plaintiff, but we cannot now with reasonable certainty foresee such a result. Whether it can be said then, at the conclusion of the trial, will likely depend largely upon what evidence is offered, objections thereto, and rulings on the admissibility thereof that we cannot foretell; but there likely will be many that will be difficult to make with confidence. It may well be that the plaintiff has an extraordinarily hard road to travel to convince the trial court that he is entitled to

---

3. Tonsmeire v. Tonsmeire, 281 Ala. 102, 199 So.2d 645.

4. White v. Birmingham Post Co., 235 Ala. 278, 178 So. 449.

have the trier of facts determine whether any part of the letter was understood in a defamatory sense by those to whom it was published, as well as other issues, including those presented by potential affirmative defenses, and, in the event he does so, a continuing difficult task in attempting to convince the trier of facts of the righteousness of his cause, but we are not convinced by the record before us that he is disentitled to his day in court on the evidence.[5]

We have fully considered Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d —— (1974), destined to be an important factor in many future decisions in cases of defamation, and find that our decision herein is not in conflict with what was held therein.

We are in general agreement with appellee that assignments of error not directed at the action of the trial court in dismissing the action are not well taken and are not adequately presented in appellant's brief and argument. No further discussion of such assignments seems necessary or advisable.

The judgment appealed from is due to be reversed, the judgment dismissing the action set aside and the cause remanded for further proceeding in accordance herewith.

Reversed and remanded.

HEFLIN, C. J., and FAULKNER and JONES, JJ., concur.

MERRILL, COLEMAN and BLOODWORTH, JJ., dissent.

HARWOOD, MADDOX and McCALL, JJ., recuse themselves.

BLOODWORTH, Justice (dissenting).

I must dissent as I do not believe that Dr. Pow's letter in direct response to the letter of Dr. Bowling asking Dr. Pow to respond can, in any fashion, be characterized as defamatory per se or per quod. I would affirm the trial judge's decision granting the motion to dismiss for failure to state a claim upon which relief can be granted, believing the trial judge to have been eminently correct.

MERRILL and COLEMAN, JJ., concur.

PER CURIAM.

On the 3rd day of July, 1974, the Chief Justice assigned the Honorable LEIGH CLARK, Supernumerary Circuit Judge, for temporary service on the Supreme Court of Alabama from that date through October 5, 1974 under the provisions of Section 6.10 of the new Judicial Article (Constitutional Amendment No. 328). Following such order Supernumerary Circuit Judge Clark was assigned the task of preparing an opinion for this court in this cause.

This court construes the language of said Section 6.10, "The Chief Justice may assign * * * supernumerary justices and judges, * * * for temporary service in any court." as meaning that such assignment is without limitation as to duties and functions and that under such an assignment a supernumerary circuit judge has the authority to vote on cases before the court.

Justices HARWOOD, MADDOX and McCALL recused themselves from this case. The vote for reversal and remandment was 4 to 3. The concurrence of 4 members of this court suffices. Title 13, § 14, Code of Alabama 1940, as amended (Recompiled 1958–1973 Cumulative Supplement).

HEFLIN, C. J., and MERRILL, BLOODWORTH, FAULKNER and JONES, JJ., concur.

---

5. This is not to be construed to preclude the raising, or to prejudge the merits, of any future pretrial question that could conceivably be dispositive of the case. Nor is this note intended to encourage or discourage such procedure.