This is an appeal under Rule 5, ARAP, from an interlocutory order of the Circuit Court of Marshall County declaring that certain radio broadcasts, if defamatory, would constitute libel rather than slander. We affirm.
For the purposes of this opinion it is necessary to recite only the facts essential to our decision. These are that the defendant Bailey, as pastor of the defendant church, taped a series of sermons at an Arab radio station, and each of these tapes was later broadcast over the airwaves by the station.
This is a case of first impression in our jurisdiction. A similar case has been decided but this precise issue was not before the Court because the parties themselves considered the case as one involving slander, *Page 648 
and so the case was reviewed from that premise. Brown v.W.R.M.A. Broadcasting Company, 286 Ala. 186, 238 So.2d 540
(1970).
Libel is commonly perceived as a defamation which springs from the publication of written or printed material. Cf. Marionv. Davis, 217 Ala. 16, 114 So. 357 (1927) with White v.Birmingham Post Co., 233 Ala. 547, 172 So. 649 (1937). "Generally," it was stated in Bowling v. Pow, 293 Ala. 178,301 So.2d 55 (1974), "any false and malicious publication, when expressed in printing or writing, or by signs or pictures, is a libel, which . . . tends to bring an individual into public hatred, contempt, or ridicule. . . ."
The expansion of communication technology has also enlarged the opportunities for dissemination of defamatory material, bringing with them difficulties in applying the original conceptions to contemporary innovations. These difficulties have led to divergent views. In an early case on the question,Sorenson v. Wood, 123 Neb. 348, 243 N.W. 82 (1932), it was held that statements in a written political address read over the radio constituted libel, not slander. Likewise, when a news commentator read defamatory words from a written script, this was held to be libel. Hartmann v. Winchell, 296 N.Y. 296,73 N.E.2d 30 (1947). Accord, Gibler v. Houston Post Co., Tex.Civ.App., 310 S.W.2d 377 (1958) (television broadcast);Christy v. Stauffer Pub., Inc., Tex., 437 S.W.2d 814 (1969) (television broadcast). Even when a prepared script has not been used but the defamatory material was included in a statement made during a radio dialogue, this has been held to be libel rather than slander. Shor v. Billingsley, 4 Misc.2d 857,158 N.Y.S.2d 476; aff'd. 4 A.D.2d 1017, 169 N.Y.S.2d 416
(1956). And in at least one case the jury has been instructed that a broadcast containing defamatory material was libelous per se without any qualification. Wanamaker v. Lewis, D.C.,173 F. Supp. 126 (1956). Contra, Arno v. Stewart, 245 Cal.App.2d 955,54 Cal.Rptr. 392 (1966).
Dean Prosser has commented upon these developments in his treatise, Prosser, The Law of Torts, § 112, p. 752 (4th ed. 1971):
 The distinction itself between libel and slander is not free from difficulty and uncertainty. As it took form in the seventeenth century, it was one between written and oral words. But later on libel was extended to include pictures . . . and even conduct carrying a defamatory imputation, such as hanging the plaintiff in effigy, erecting a gallows before his door, dishonoring his valid check drawn upon the defendant's bank, or even, in one Wisconsin case, following him over a considerable period in a conspicuous manner. From this it has been concluded that libel is that which is communicated by the sense of sight, or perhaps also by touch and smell, while slander is that which is conveyed by the sense of hearing. But this certainly does not fit all of the cases, since it seems to be agreed that defamatory gestures or the signals of a deaf-mute are to be regarded as slander only, while matter communicated by sound to be reduced to writing afterwards, as in the case of a telegraph message, or dictation to a stenographer, or even an interview given to a reporter, is considered libel. Furthermore, it is generally held that it is a publication of a libel to read a defamatory writing aloud. This might suggest that the distinction is one of embodiment in some more or less. permanent physical form, and frequently it is so stated. . . .
 The unexpected advent of new methods of communication has left the courts struggling with the distinction. They have found no difficulty in holding that the sound in a "talking" picture is libel, since it accompanies and is identified with the film itself. Defamation by radio and television is, however, still a subject of violent debate. It has been considered by comparatively few courts, and held by some to be libel, by one slander, . . . while still others apparently have regarded it as having special characteristics half way between the two. . .. *Page 649 
The concurring opinion of Fuld, J., in Winchell, supra,296 N Y at 300-304, 73 N.E.2d at 33 articulates the policy issues inherent in reaching a decision on the classification:
 It impresses me as unreal to have liability turn upon the circumstance that defendant read from a script when . . . none of his listeners saw that script or . . . was even aware of its existence. As I see it, liability cannot be determined here without first facing and deciding the basic question whether defamation by radio, either with or without a script, should be held actionable per se because of the likelihood of aggravated injury inherent in such broadcasting.
. . . . .
 If the base of liability for defamation is to be broadened in the case of radio broadcasting, justification should be sought not in the fiction that reading from a paper ipso facto constitutes a publication by writing, but in a frank recognition that sound policy requires such a result. . . . Abolition of the line between libel and slander would . . be too extreme a break with the past to be achieved without legislation. . . . It is, however, the function of the courts, when called upon to determine which of two competing standards of liability shall be applied in a novel situation, to re-examine and reapply the old rules and to give them new content in the light of underlying vital principles. . . .
Judge Fuld discussed the early law of slander, and the later development of libel law which made the writing itself "presumptive proof of damage." Emphasis on the form of publication, he wrote, "was apparently designed to cope with the new conditions created by the development of the printing press." He continued:
 Though some have said that the differentiation between libel and slander is the result of historical accident, without rational basis . . . this court, disagreeing, has regarded the "schism" as founded upon policy and "not the product of mere accident." . . . If considerations of principle are to control, there is no valid reason why the same consequences should not attach to publication through the medium of radio broadcasting as flow from publication through the medium of writing.
 The primary reason assigned by the courts from time to time to justify the imposition of broader liability for libel than for slander has been the greater capacity for harm that a writing is assumed to have because of the wide range of dissemination consequent upon its permanence in form. . . . When account is taken of the vast and far-flung audience reached by radio today — often far greater in number than the readers of the largest metropolitan newspaper . . it is evident that the broadcast of scandalous utterances is in general as potentially harmful to the defamed person's reputation as a publication by writing. That defamation by radio, in the absence of a script or transcription, lacks the measure of durability possessed by written libel, in nowise lessens its capacity for harm. Since the element of damage is, historically, the basis of the common-law action for defamation, and since it is as reasonable to presume damage from the nature of the medium employed when a slander is broadcast by radio as when published by writing, both logic and policy point the conclusion that defamation by radio should be actionable per se . . .
In its Restatement of The Law of Torts, Second, the American Law Institute has adopted the preceding rationale. In § 568 libel is defined as follows:
 (1) Libel consists of the publication of defamatory matter by written or printed words, by its embodiment in physical form or by any other form of communication that has the potentially harmful qualities characteristic of written or printed words.
[Emphasis added.]
Broadcasting is specially treated in § 568A:
 Broadcasting of defamatory matter by means of radio . . . is libel, whether or not it is read from a manuscript. [Emphasis added.] *Page 650 
Comment:
 a. This Section is a special application of the rule stated in § 568, under which defamation by any form of communication that has the potentially harmful qualities characteristic of written or printed words is to be treated as libel. The wide dissemination that results from broadcasting over radio . . . together with the prestige and potential effect upon the public mind of a standardized means of publication that many people tend automatically to accept as conveying truth, are such as to put the broadcaster upon the same footing as the publisher of a newspaper.
We are persuaded by the reasoning of the decisions cited and the American Law Institute that the rule within our jurisdiction should accord with § 568A of the Restatement as it applies to radio broadcasts. Accordingly, if the statements which were broadcast were defamatory they would constitute libel. It follows that the order of the trial court must be, and is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.