Darwin HOLT

v.

COX ENTERPRISES, The Atlanta
Journal Newspapers and
Darrell Simmons.

No. C82–2847A.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 28, 1984.

Hilliard R. Reddick, Jr., Hardin & Hollis, Birmingham, Ala., Malcolm D. Young, Jr., R. Hal Meeks, Jr., Peterson, Young, Self & Asselin, Atlanta, Ga., for plaintiff.

John H. Morrow, Bradley, Arant, Rose & White, Birmingham, Ala., Albert G. Norman, Jr., Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for defendants.

ORDER

RICHARD C. FREEMAN, District Judge.

Plaintiff Darwin Holt seeks damages for libel and invasion of privacy. The action is before the court on the defendants' motion for summary judgment, Rule 56, Fed.R. Civ.P., and the plaintiff's opposition thereto. For the reasons that follow, the court will grant the defendants' motion.

Holt's claims are based on five newspaper articles published in September 1979 by defendant Cox Enterprises, Inc. Each of these articles contains reference to Holt's role in a controversy surrounding a sporting event that occurred eighteen years earlier.

On November 18, 1961, Georgia Tech and the University of Alabama played a highly publicized football game in Birmingham,

Alabama. Holt, who had earlier been named a High School All-American, was a "star" on the 1961 Alabama team, which achieved number one ranking nationally, both before the game and at the end of the 1961 season. Holt was signal caller for the defensive unit and had received several honors for his play. In the final quarter of the game, Tech was forced to punt. In the course of the play, Holt struck Tech's captain, Chick Graning, in the face with his forearm or elbow. As a result, Graning suffered a broken jaw, a broken nose, a concussion, and the loss of several teeth. The officials called no penalty against Alabama.

For several months following the game, numerous articles in the Atlanta press contained accusations that Holt's blow to Graning was a foul and that Alabama should have been penalized. The play and the ensuing controversy were reported nationally by newspapers and broadcasters. Although at the time Holt declined many opportunities to tell his side of the story to the public, he has since maintained in interviews that his block on Graning was within the rules and that the injuries to Graning were unintentionally inflicted.

Sometime after the incident, Georgia Tech decided to end its series of games against Alabama, even though the two teams were committed to play annually until 1964. Since then, there has been continuing, published debate as to whether the "Holt-Graning incident" was the cause of Tech's decision. The incident has also been the subject of debate about the proper manner and purpose of playing college football.

In September 1979, Tech and Alabama resumed their series of football games, rekindling public interest in the history of the two teams' rivalry and specifically in the event that many thought had led to the fifteen-year interruption of competition between the two schools. In the intervening years, Holt had, with one exception, declined numerous invitations from the press to present his view of the incident and the ensuing controversy. The exception was an interview that served as the basis for an article that appeared in *The Tuscaloosa News* in July 1977. With the resumption of the Tech-Alabama series, Holt again granted an interview with a sportswriter for *The Tuscaloosa News*. As a condition of his consent to the interview, Holt received the right to review and approve the article prior to publication. Parts of the interview were published in two articles, one of which described the views held by the two sides to the controversy surrounding the incident.

The first of the five articles that are the subject of the instant action appeared in the sports pages of the *Sunday Atlanta Journal and Constitution* on September 2, 1979. This article was written by defendant Darrell Simmons and described the controversy that had arisen from the incident in 1961. In general, the article relates contrasting views, quotes comments of contemporary commentators and participants, and describes the emotions engendered by the incident. Although Simmons expresses no particular view of his own with respect to the incident itself and sides with no one's opinion as to the incident, his article recounts many contemporary comments about the incident and specifically about Holt's character. This article primarily concerns the public controversy and the emotions of the fans and commentators.

The remaining four articles were published during the first week of September 1979 in *The Atlanta Journal*. One of these articles, the only other article written by Simmons, describes how the passage of time has affected the attitudes and feelings of the persons involved in the incident. The other three articles concern the resumption of the Tech-Alabama series and contain passing mention of the incident only as a possible cause of the interruption of the series.

Plaintiff contends that the articles "placed him in a false light, are libelous and invade his right to privacy." Plaintiff's Response to Renewed Motion at 1. Defendants' primary argument in support of their motion for summary judgment is

that Holt is a "public figure" and that Holt cannot show the requisite degree of fault—actual malice—necessary to hold them liable for their statements and disclosures regarding him. The court agrees.

Initially, the court must identify the statements complained of and determine whether they contain defamatory matter. *See Brewer v. Memphis Publishing Co.,* 626 F.2d 1238, 1241 n. 4 (5th Cir.1980). Holt has not identified in his pleadings the specific matter in these articles that he asserts is defamatory. Holt has, however, detailed in deposition testimony the matter he finds objectionable. All of this matter is either direct quotation of the statements of other persons or reference in a general way to the public's opinion of Holt's character following the incident.

As noted above, the articles merely repeat, without adopting as the defendants' own, statements made eighteen years prior to publication of the 1979 articles regarding the incident. Nevertheless, if in reporting the controversy the defendants have republished defamatory matter, they may be held liable for defamatory statements in the 1979 articles as if those statements were originally published in those articles. *See* Restatement (2d) of Torts § 578.

Not all of the matter identified by Holt is capable of defamatory meaning. Descriptions of Holt as "animal from Alabama" or "caveman incarnate," reference to the incident under the headline "New Darwin Theory," and characterization of Holt's manner of play as "more bestial than academic," are at worst hyperbolic, figurative name-calling and are not actionable. *Cf. Old Dominion Branch No. 496, National Association of Letter Carriers v. Austin,* 418 U.S. 264, 284, 94 S.Ct. 2770, 2781, 41 L.Ed.2d 745 (1974); *Loeb v. New Times,* 497 F.Supp. 85, 90–91 (S.D.N.Y.1980). The words "encounter" and "incident" carry no negative connotations; although they could remind the reader of defamatory statements made elsewhere in the articles about the "incident" or "encounter" between Holt and Graning or about the ensuing controversy, these two words are not alone capable of defamatory meaning. The statements to the effect that Holt made history in "a most negative fashion" and that he marred the Alabama team's "otherwise perfect season" are not capable of being determined to be true or false by a factfinder and are thus unverifiable opinions upon which no defamation action can be based. *See Buckley v. Littell,* 539 F.2d 882 (2d Cir.1976), *cert. denied,* 429 U.S. 1062, 97 S.Ct. 785–86, 50 L.Ed.2d 777 (1977). Finally, any statements regarding the reputation of the Alabama team as a whole with respect to violence on the field cannot be understood as defamation of Holt as a member of the team. *See Barger v. Playboy Enterprises, Inc.,* 564 F.Supp. 1151, 1153–55 (N.D.Colo.1983); Restatement (2d) of Torts § 564A.

■ Nevertheless, much of the matter republished in the articles is clearly defamatory. The articles contain descriptions of Holt's act as not merely overly-aggressive play, but flagrant violation of standards of decency in football. Some of the statements suggest that Holt admitted to violating the rules intentionally. Holt's contact is referred to as an "old Alabama greeting 'pow' right in the kisser," a "cheap shot," a "flying elbow," Holt's "latest act of violence," an "illegal" blow, and the striking of Graning "so savagely and unexplainably." A factfinder could reasonably conclude that such statements tend to injure Holt's character, reflect shame, or "put him without the pale of social intercourse." *U.S. Steel Corp. v. Darby,* 516 F.2d 961 (5th Cir.1975); *Bowling v. Pow,* 301 So.2d 55, 293 Ala. 178 (1974).

■ The question whether a particular person is a public figure is a question of law to be decided by the court. *Brewer,* 626 at 1247. Summary judgment on this issue is appropriate if, as here, there exists no dispute as to the facts relevant to the plaintiff's status as a public or private figure. *Rosanova v. Playboy Enterprises, Inc.,* 580 F.2d 859, 861–62 (5th Cir.1978).

■ A plaintiff in a defamation case who, like Holt, has not "achieved such per-

 

vasive fame or notoriety that he [has become] a public figure for all purposes and in all contexts," *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351, 94 S.Ct. 2997, 3013, 41 L.Ed.2d 789 (1974), may nonetheless be considered a "limited purpose" public figure with regard to public comment on a limited range of issues, *Brewer*, 626 F.2d at 1249–55. In either case, the press is afforded more leeway for error with regard to public figures because, first, such persons often have greater access to the press for rebuttal than private persons normally enjoy, *Gertz*, 418 U.S. at 344, 94 S.Ct. at 3009, and, second, they have by their voluntary acts invited public attention and comment, *id.* at 345, 94 S.Ct. 2997; *Brewer*, 626 F.2d at 1254–55; *Rosonova*, 580 F.2d at 861.

■ As a member of the Alabama football team, Holt voluntarily played that sport before thousands of persons—spectators and sportswriters alike—and he necessarily assumed the risk that these persons would comment on the manner in which he performed. The defamatory comments in the articles relate solely to Holt's play on the field and are thus within the limited range of issues upon which Holt invited comment. Holt, like other sports figures who have sought redress through defamation actions, *see, e.g.*, *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 154, 87 S.Ct. 1975, 1991, 18 L.Ed.2d 1094 (1967); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir.1979), *aff'g*, 431 F.Supp. 254 (E.D.Pa.1977); *Time, Inc. v. Johnston*, 448 F.2d 378 (4th Cir.1971); *Cepeda v. Cowles Magazine and Broadcasting, Inc.*, 392 F.2d 417, 419 (9th Cir.1968), must be considered a public figure, whose actions on the field sportswriters may criticize within the protective "breathing space" required by the First Amendment. *See Brewer*, 626 F.2d at 1257. It is immaterial that at first he chose for personal reasons not to avail himself of the opportunity to defend his character. At the time and in the years that followed, Holt continued to enjoy such access to the press and later granted two interviews, one of which was published with his acquiescence within a

month prior to the defendants' publication of the five articles that refer to the incident.

Holt correctly notes that the substantial press interest in him following the 1961 game and the granting of the two interviews in 1977 and 1979 cannot alone support a finding that he is a public figure. *See Time, Inc. v. Firestone*, 424 U.S. 448, 453–54, 96 S.Ct. 958, 964–65, 47 L.Ed.2d 154 (1976). However, Holt became a limited-purpose public figure with regard to his conduct on the field not solely by virtue of public interest in the Holt-Graning incident but prior to the incident, when he first engaged in the sport. Moreover, given the public's continued interest in the incident and its legitimate interest in the relationship between the incident and the interruption of the Georgia Tech-Alabama series, Holt's status as a public figure was not so diminished that the press is afforded correspondingly diminished protection to comment on the incident and the controversy. *Cf. Brewer*, 626 F.2d at 1256–57.

The court finds no merit in Holt's argument that his status as a non-professional distinguishes this case from other sports figure cases. By voluntarily engaging in a highly publicized sporting event, Holt necessarily attracted publicity. He had been the subject of press recognition even before the incident occurred. That Holt was not paid for his performance does not alter the fact that once he played in a public contest he was bound, if successful, to encounter substantial recognition of and comment upon both his good and bad play.

Finally, Holt cannot avoid public figure status by asserting that when he took the field as an Alabama football player, he intended to do so only as a relatively small part of the public scene. "[T]he status of a public figure *vel non* does not depend upon the desires of an individual.... It is no answer to the assertion that one is a public figure to say, truthfully, that one doesn't choose to be." *Rosanova*, 580 F.2d at 861.

■ To recover in a defamation action, a public figure must prove with convincing

clarity that defamatory statements were made with "actual malice," that is, that the defendants published an allegedly false statement with knowledge of its falsity or with reckless disregard of whether it was false. *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); *Hunt v. Liberty Lobby*, 720 F.2d 631, 642 (11th Cir.1983). Defendants may be held liable only if they published the statements in spite of a "high degree of awareness of probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964).

> [R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.

*St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968); *see also Long v. Arcell*, 618 F.2d 1145, 1147 (5th Cir.1980).

■ Because actual malice refers to a defendant's mental state with respect to truthfulness, the issue does not always readily lend itself to determination on a motion for summary judgment. *See Hutchinson v. Proxmire*, 443 U.S. 111, 120 n. 9, 99 S.Ct. 2675, 2680 n. 9, 61 L.Ed.2d 411 (1979). Nevertheless, summary judgment will be granted for a defendant if the record, construed in a light most favorable to the plaintiff, demonstrates that the plaintiff has asserted no facts that would support a jury finding that the defendants entertained substantial doubt as to the truth of the comments concerning Holt's character. *See Rebozo v. Washington Post Co.*, 637 F.2d 375, 380–82 (5th Cir. 1981); *Southard v. Forbes, Inc.*, 588 F.2d 140, 146 (5th Cir.1979), *cert. denied*, 444 U.S. 832, 100 S.Ct. 62, 62 L.Ed.2d 41 (1980).

In the instant case, Simmons and the authors of the other articles have submitted affidavits in which they aver that they entertained no doubt as to the truth of the articles at issue; that in writing the articles they followed accepted procedures, reviewing files and drawing on their personal experience and on interviews with knowledgeable parties; and that they found support for their statements in previous newspaper accounts upon which they reasonably relied. *Cf. Rosanova*, 580 F.2d 859, 862 (5th Cir.1978).

Although Holt argues that this action presents jury questions as to whether the defendants' statements bear a defamatory meaning, he has not contended that questions of fact exist with regard to the issue of actual malice. Holt has submitted no affidavits or other testimonial matter in opposition to the motion, *see* Rule 56(e), Fed.R.Civ.P.; Local Court Rule 91.72, nor has he pointed in his brief to any defect or inconsistency in the defendants' assertions with regard to absence of malice. A public figure plaintiff in a defamation case is not required to come forward with an admission by one or more of the articles' authors that an author knew his material was false or that he doubted its truth; he may instead rely on circumstantial evidence. *See Hunt v. Liberty Lobby*, 720 F.2d 621, 643 (11th Cir.1983). Holt, however, has failed to demonstrate that any direct or circumstantial evidence of actual malice may be found in the record. The court therefore concludes that as to the issue of malice, summary judgment in defendants' favor is warranted.

■ Having failed to show that the defendants published the statements with actual malice, Holt cannot recover damages from them in a libel action.[1] *Hunt v. Liberty Lobby, Inc.*, 720 F.2d at 642. Moreover, "false light" invasion of privacy, like libel, requires a showing of actual malice. *Time, Inc. v. Hill*, 385 U.S. 374, 387–91, 87 S.Ct. 534, 542–44, 17 L.Ed.2d 456 (1967); Restatement (2d) of Torts § 652D.

■ In the complaint, Holt alleged an invasion of his privacy only by acts that "place[d] the plaintiff in a false light in the public eye." Complaint at ¶ 4. Although he has not amended his complaint to broaden his claims with respect to invasion of privacy, Holt relies in his brief upon cases

that involve invasion of privacy by the truthful disclosure of embarrasing facts. *See e.g., Briscoe v. Reader's Digest Association,* 4 Cal.3d 529, 93 Cal.Rptr. 866, 483 P.2d 34 (1971). This action was filed in 1979 and has since been pursued in two district courts and the court of appeals on the basis of the allegations in the complaint. Holt may not at this late date make a substantial change in the nature of his action solely by means of argument in a brief. In any event, the defendants will not be held to have invaded Holt's privacy by public disclosure of private facts where, as here, the plaintiff is at least for some purposes a public figure and the facts disclosed concern not a private matter but information related solely to the public part of a limited purpose public figure's life. *See Campbell v. Seabury Press,* 614 F.2d 395, 397 (5th Cir.1980); *Abernathy v. Thornton,* 263 Ala. 496, 83 So.2d 235 (1955); *Smith v. Doss,* 251 Ala. 250, 253, 37 So.2d 118 (1948).

Accordingly, for the above reasons, the defendants' motion for summary judgment is GRANTED. The clerk is DIRECTED to enter final judgment in this action.